Chen Kasher
SCHLICHTER BOGARD, LLC
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
ckasher@uselaws.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAKIRA WILLIAMS-LINZEY, JENNIFER PATTON, and KATHLEEN MCFARLAND, individually and as representatives of a class of similarly situated individuals,<br><br>*Plaintiffs*,<br>v.<br><br>EMPOWER ADVISORY GROUP, LLC; EMPOWER RETIREMENT, LLC; EMPOWER FINANCIAL SERVICES, INC.; and EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA,<br><br>*Defendants*. | No. 3:25-cv-14660 (RK) (TJB)<br><br>Hon. Robert Kirsch<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** |

# CONTENTS

Authorities ........ ii
Introduction ........ 1
Background ........ 3
I. Statutory background ........ 3
II. Factual background ........ 5
Legal Standard ........ 10
Argument ........ 11
I. Empower acted as an ERISA fiduciary by providing investment advice for a fee (Counts I and II). ........ 11
A. Empower is a fiduciary under the plain statutory language. ........ 12
B. Empower provided investment advice under the regulation ........ 14
C. Empower is equitably estopped from denying its fiduciary status. ........ 19
D. Empower's misuse of plan data also establishes fiduciary status. ........ 21
II. Plaintiffs alternatively allege a plausible claim for non-fiduciary liability. ........ 21
A. Plaintiffs plausibly allege Empower's knowing participation in breaches of fiduciary duty. ........ 22
B. Plaintiffs plausibly allege Empower's knowing participation in prohibited transactions. ........ 25
Conclusion ........ 27

# AUTHORITIES

## Cases

*Am. Sec. Ass'n v. United States DOL*,
No. 22-330, 2023 U.S. Dist. LEXIS 24076 (M.D. Fla. Feb. 13, 2023) ..............19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................10

*Boggs v. Boggs*,
520 U.S. 833 (1997)............................................................................................3

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..........................................................................5, 10

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
631 F. Supp. 3d 125 (S.D.N.Y. 2022) ..............................................................17

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
No. 21-8384, 2024 U.S. Dist. LEXIS 97679 (S.D.N.Y. May 31, 2024).............22

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985)............................................................................................4

*Chamber of Com. of United States of Am. v. United States Dep't of Lab.*,
885 F.3d 360 (5th Cir. 2018) ..............................................................................19

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)............................................................................................14

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)............................................................................................20

*Cunningham v. Cornell Univ.*,
86 F.4th 961 (2d Cir. 2023), *rev'd*, 604 U.S. 693 (2025)....................................25

*Cunningham v. Cornell University*,
604 U.S. 693 (2025)........................................................................................ 25, 26

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
931 F.3d 269 (4th Cir. 2019) ....................................................................... 12, 15

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982) ...............................................................................2

*Dormeyer v. Comerica Bank-Illinois*,
223 F.3d 579 (7th Cir. 2000) ..............................................................................14

*Erdman v. Nationwide Ins. Co.*,
582 F.3d 500 (3d Cir. 2009) ....................14

*Fed'n of Ams. for Consumer Choice, Inc. v. U.S. Dept. of Labor*,
No. 22-243, 2023 U.S. Dist. LEXIS 157268 (N.D. Tex. June 30, 2023), *adopted by* 2025 U.S. Dist. LEXIS 130004 (July 9, 2025) .................... 16, 17

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....................4

*Graden v. Conexant Sys. Inc.*,
496 F.3d 291 (3d Cir. 2007) .................... 13, 18

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000).................... 5, 22, 23

*Hughes Aircraft Co. v. Jacobson,*
525 U.S. 432 (1999)....................23

*In re Honeywell Int'l ERISA Litig.*,
No. 03-1214 (DRD), 2004 U.S. Dist. LEXIS 21585 (D.N.J. Sep. 14, 2004) ....................11

*In re Lipitor Antitrust Litig.*,
868 F.3d 231 (3d Cir. 2017) ....................10

*In re Schering-Plough Corp. ERISA Litig.*,
No. 03-1204 (KSH), 2007 U.S. Dist. LEXIS 59708 (D.N.J. Aug. 15, 2007) ....................11

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
510 U.S. 86 (1993)....................4, 15

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ....................12

*Leckey v. Stefano*,
501 F.3d 212 (3d Cir. 2007) ....................11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................14

*Matinchek v. John Alden Life Ins. Co.*,
93 F.3d 96 (3d Cir. 1996) ....................14

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)....................4

*Nat'l Sec. Sys. v. Iola*,
700 F.3d 65 (3d Cir. 2012) .......... 23, 24

*Neurosurgical Assocs. of NJ, P.C. v. QualCare Inc.*,
No. 15-3236, 2015 U.S. Dist. LEXIS 97884 (D.N.J. July 28, 2015) .......... 11

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......... 17, 19

*Phillips v. Cty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .......... 3

*Reich v. Compton*,
57 F.3d 270 (3d Cir. 1995) .......... 24

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) .......... 23, 25

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
768 F.3d 284 (3d Cir. 2014) .......... 14

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) .......... 3

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019) .......... passim

*Teets v. Great-West Life & Annuity Ins. Co.*,
919 F.3d 1232 (10th Cir. 2019) .......... 21

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) .......... 6

**Statutes**

29 U.S.C. § 1002(14)(B) .......... 5, 26

29 U.S.C. § 1002(21)(A) .......... 14, 15

29 U.S.C. § 1002(21)(A)(i) .......... 21

29 U.S.C. § 1002(21)(A)(ii) .......... 2, 4, 12

29 U.S.C. § 1002(21)(A)(iii) .......... 21

29 U.S.C. § 1002(34) .......... 18

29 U.S.C. § 1002(7) .......... 5

29 U.S.C. § 1002(8) ....................................................................................5
29 U.S.C. § 1002(9) ....................................................................................12
29 U.S.C. § 1003(b)(1)..................................................................................6
29 U.S.C. § 1003(b)(2)..................................................................................6
29 U.S.C. § 1102(a) ....................................................................................4
29 U.S.C. § 1104(a)(1)..................................................................................9
29 U.S.C. § 1104(a)(1)(B) ............................................................................5
29 U.S.C. § 1106(a) .......................................................................... 5, 9, 23
29 U.S.C. § 1106(b) ....................................................................................9
29 U.S.C. § 1109(a) ....................................................................................5
29 U.S.C. § 1132(a)(2)...............................................................................5, 21
29 U.S.C. § 1132(a)(3)...............................................................................5, 22

**Regulations**

29 C.F.R. § 2509.96-1(c) ..........................................................................13
29 C.F.R. § 2510.3-21(c)(1)..........................................................................15
29 C.F.R. § 2510.3-21(c)(1)(ii)(B) ................................................................15

## INTRODUCTION

This case arises from a corporate policy instituted by Defendant Empower Advisory Group and its affiliates[1] for the purpose of defrauding participants in employer-sponsored 401(k) plans of their hard-earned retirement savings. As the recordkeeper for thousands of employer-sponsored retirement plans, Empower has access to employees' highly confidential financial data. Empower abused that access by using the data to identify sales prospects—typically employees with large account balances nearing retirement—and then subjecting the targets to a highly structured sales pitch designed to manipulate and deceive them into transferring retirement assets to Empower's high-cost and lucrative products outside of the plans. Empower thereby enriched itself at the workers' expense. In connection with this scheme, the SEC recently sanctioned Empower through cease-and-desist proceedings.[2]

Plaintiffs bring this action to recover for Empower's violations of the Employee Retirement Income Security Act (ERISA). In its role as a service

[1] Although the complaint names four Empower entities, Defendants' motion refers to all of them collectively as "Empower." *See* Mem. at 1 n.1. Plaintiffs' opposition does the same.

[2] *In the Matter of Empower Advisory Group, LLC and Empower Financial Services, Inc.*, Admin. Proceeding No. 3-22517, Order Instituting Admin. and Cease-and-Desist Proceedings (Aug. 29, 2025), *available at* https://www.sec.gov/files/litigation/admin/2025/34-103809.pdf [https://perma.cc/L6PP-2L6E].

provider to ERISA-governed plans, Empower created relationships of trust and confidence with plan participants by regularly and continuously providing advice as to how plan assets should be invested, thereby functioning as an ERISA "fiduciary."[3] As such, Empower was obligated to discharge its duties prudently and loyally by providing advice designed to further the interests of the plan participants rather than Empower's own interests—duties that are "the highest known to the law." *Sweda v. Univ. of Pa.,* 923 F.3d 320, 333 (3d Cir. 2019) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

Empower does not contest that Plaintiffs' allegations describe egregious violations of ERISA's fiduciary duties—it merely disputes that those duties applied. As discussed below, Empower's disputes about its fiduciary status are premature and involve fact-intensive questions that cannot be resolved at this early stage. Although Empower tries to portray its dismissal arguments as questions of law, its arguments depend on accepting a factual narrative that conflicts with the actual allegations in the complaint. Empower relies on the false narrative that Plaintiffs' claims concern investment advice rendered *after* assets were transferred out of ERISA "Title I" retirement plans and into ERISA "Title II" IRAs. They do

---

[3] *See* 29 U.S.C. § 1002(21)(A)(ii) ("[A] person is a fiduciary with respect to a plan to the extent he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so.").

not. Plaintiffs allege that Empower triggered fiduciary status by continuously advising participants regarding their Title I plan investments for years *before* any of them transferred assets outside of the Title I regime, thereby establishing a trusted fiduciary-advice relationship *before* Empower violated that trust through the fraudulent sales process. Empower simply ignores or disputes the alleged facts, which must be taken as true at this stage.

Because Empower's arguments concern fact-sensitive issues rather than pure questions of law, there is also no basis for a dismissal *with* prejudice, as Empower requests. While Plaintiffs' existing factual allegations sufficiently establish Empower's fiduciary status and transactions subject to ERISA, any defect in that regard could easily be cured or clarified by amendment. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

For these reasons, explained further below, the Court should deny Empower's motion to dismiss.

## BACKGROUND

### I. Statutory background

"The principal object of [ERISA] is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)); *Sweda*, 923 F.3d at 326–27 ("ERISA's protective function is a focal point of the statute."); *see* 29 U.S.C. § 1001(a).

ERISA accomplishes its protective purposes by imposing "strict standards of trustee conduct . . . derived from the common law of trusts — most prominently, a standard of loyalty and a standard of care." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)); *see* 29 U.S.C. §§ 1001(b), 1104(a).

ERISA requires that every employee benefit plan be maintained under a written document that identifies one or more "named fiduciaries" with authority to manage the plan, analogous to a common-law trustee. 29 U.S.C. § 1102(a). Fiduciary duties also attach to those who perform particular functions, including anyone who "renders investment advice" regarding plan assets. *See* 29 U.S.C. § 1002(21)(A). This definition speaks "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Thus, "service providers" who "cross the line" by performing fiduciary functions may be held liable for breach of fiduciary duty. *Id*. By using "commodious[]" language to define fiduciary, Congress ensured that ERISA's strict standards would attach to all "persons whose actions affect the amount of benefits retirement plan participants will receive." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993).

ERISA fiduciaries are obligated to act "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Congress supplemented the general fiduciary duties by categorically prohibiting certain transactions with plan insiders, including service providers. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000); 29 U.S.C. §§ 1002(14)(B), 1106(a). A breaching fiduciary is liable for any resulting "losses to the plan," and is subject to equitable relief, such as disgorgement of profits made through use of plan assets. 29 U.S.C. § 1109(a). A non-fiduciary who "knowingly participates" in a fiduciary's violation is also subject to such equitable relief. *Harris Tr.*, 530 U.S. at 246, 250–51; *see* 29 U.S.C. § 1132(a)(3). To enforce these obligations, Congress granted a right of action to any "participant" or "beneficiary," which is the same authority granted to the Secretary of Labor. 29 U.S.C. § 1132(a)(2), (a)(3).[4] The Secretary "depends in part on private litigation to ensure compliance with the statute." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009).

## II. Factual background

Empower is among the largest providers of retirement plan administrative and

---

[4] A "participant" is "any employee or former employee of an employer … who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. § 1002(7), while a "beneficiary" is "a person designated by a participant" or the terms of the plan "who is or may become entitled to a benefit" under the plan, 29 U.S.C. § 1002(8).

investment services. Am. Compl. ¶¶ 30–33 (ECF No. 51). As "the second-largest recordkeeper of defined contribution retirement plans," Empower services "approximately 17.4 million participants, . . . over $1.4 trillion in assets . . ., and approximately 71,000 plan clients." *Id.* ¶ 32.

The named Plaintiffs and proposed class members are among those 17.4 million participants. *Id.* ¶¶ 18–20, 26, 175. The proposed class members invested in defined contribution plans sponsored by their employers and governed by ERISA.[5] *Id.* ¶¶ 26, 175. In a defined contribution plan, "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). Fees and expenses "can significantly reduce the value of an account in a defined-contribution plan." *Id.* For example, the Department of Labor has illustrated that a 1% difference in fees reduces the average worker's account balance by 28% after 35 years. Am. Compl. ¶ 28. In dollar terms, this fee differential adds up to nearly $500,000 after 40 years. *Id.* Thus, excessive fees can delay an employee's ability to retire or significantly affect the standard of living in retirement.

Because employer-sponsored retirement plans pool the assets of many

[5] ERISA governs private-sector employee benefit plans except for some church plans but does not apply to public-sector plans sponsored by governmental entities. 29 U.S.C. § 1003(b)(1)–(2).

employees, plans typically have the bargaining power to achieve much lower fees for their participants than an individual employee would be able to obtain by herself in the retail marketplace. *Id.* ¶¶ 29, 60, 134. Thus, when an employee transfers money from an employer-sponsored plan to a high-cost retail product such as the Empower products at issue, the employee's hard-earned "nest egg" accumulated over decades is exposed to high fees that threaten the employee's retirement security.

The claims in this case arise from a scheme in which Empower aggressively solicited retirement plan investors to execute "rollovers" from their employer-sponsored plans to Empower products outside of the plans ("Non-Plan Products"), including a managed account program. *Id.* ¶ 3. As described in detail, Empower was acting as an ERISA fiduciary when it made such recommendations. *Id.* ¶¶ 105–18. When a plan hires Empower, Empower's "standard package of services" to the plan includes investment advice services, which are available to all participants. *Id.* ¶ 113. All parties understand that plan participants, who lack the expertise of sophisticated financial experts, will rely on Empower's advice in determining how to invest their plan assets. *Id.* ¶ 117. Empower provided these investment advice services to plans continuously throughout the class period, thereby establishing a fiduciary relationship before recommending rollovers to Empower's Non-Plan Products. *Id.* ¶ 113.

To execute its scheme, Empower used its position as a retirement plan recordkeeper and its access to sensitive personal information about plan participants to identify sales prospects. *Id.* ¶¶ 4, 34–36, 114–15, 125–26. Individuals nearing retirement with large account balances were particularly attractive targets. *Id.* ¶¶ 4, 36–37. Empower supplied its sales representatives with lists of prospective targets. *Id.* ¶¶ 36, 44. Empower trained and required its sales representatives to use fraudulent and manipulative sales tactics, which included concealing their financial incentive to recommend Empower Non-Plan Products. *Id.* ¶¶ 37–39, 49–51. Empower training materials outlined advisors' objectives to use manipulative tactics to identify participants' "pain points" and "landmines" to motivate participants to make investment changes. *Id.* ¶ 53. And as the *only* proposed solution to a participant's perceived vulnerability, Empower trained advisors to push retirement plan participants to execute rollovers from their employer-sponsored plans to Empower Non-Plan Products. *Id.* ¶¶ 55–57. Advisors who failed to comply with management directives or to meet sales goals suffered adverse consequences up to and including performance improvement plans and other disciplinary action. *Id.* ¶¶ 9, 37, 51.

In recommending Empower Non-Plan Products, Empower fraudulently misrepresented, omitted, and concealed material facts. Empower trained its advisors to falsely state that they were "salaried" or "non-commissioned" and to

emphasize that they were objective in providing advice. *Id*. ¶¶ 49–51, 58. In fact, Empower advisors were neither objective nor "non-commissioned." Rather, Empower's incentive compensation system created powerful financial incentives for advisors to steer participants into Empower's high-cost Non-Plan Products. *Id.* ¶¶ 49–51, 58.

Empower misled participants into believing that Empower was a fiduciary acting solely in their interests, when in reality, Empower's investment recommendations were intended to serve its own financial interests at the expense of participants. *Id.* ¶¶ 8–10, 12, 38–39, 52. Empower Non-Plan Products typically charged much higher fees than employer-sponsored plans and were thus far more lucrative for Empower. *Id.* ¶¶ 5, 39, 145. Yet, Empower advisors did not provide comparative fee information which would have shown participants that they would incur much higher costs by moving assets to Empower Non-Plan Products. *Id.* ¶¶ 5, 39, 145, 170.

Plaintiffs Williams-Linzey, Patton, and McFarland transferred assets from their employer-sponsored plans to Empower Non-Plan Products as a result of Empower's practices described above. *Id.* ¶¶ 18–20. Based on the above facts, Plaintiffs assert two claims premised on Empower's status as an ERISA fiduciary: (1) breach of fiduciary duties, 29 U.S.C. § 1104(a)(1) (Count I, Am. Compl. ¶¶ 182–190), and (2) prohibited transactions, 29 U.S.C. § 1106(a)–(b) (Count II,

Am. Compl. ¶¶ 191–197). Alternatively, to the extent any defendant was not acting as a fiduciary, such defendant is nevertheless liable based on having knowingly participated in ERISA violations by employer-fiduciaries who failed to monitor or restrict Empower's cross-selling (Count III, Am. Compl. ¶¶ 131–59, 198–206). On behalf of a proposed class, Plaintiffs seek recovery of losses and equitable relief. Am. Compl. ¶¶ 14, 190, 197, 206, pp. 79–80.

## LEGAL STANDARD

The Court must evaluate a complaint "holistic[ally]" to determine whether it plausibly demonstrates an entitlement to relief. *Sweda*, 923 F.3d at 331. A complaint "should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* (quoting *Braden*, 588 F.3d at 594) (quotation and editing marks omitted). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 259 (3d Cir. 2017). A complaint need only allege enough facts, taken as true, to raise a reasonable inference of liability. *Sweda*, 923 F.3d at 325 (citing *Ashcroft,* 556 U.S. at 678). ERISA claims regarding fiduciary conduct are "inherently factual" and depend on the "totality of the circumstances." *Id*. at 329, 332.

## ARGUMENT

### I. Empower acted as an ERISA fiduciary by providing investment advice for a fee (Counts I and II).

Plaintiffs' first two claims include the following elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Sweda*, 923 F.3d at 328 (quoting *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007)). Empower challenges only the first element, disputing that it acted as an ERISA fiduciary.

Courts in this district have routinely denied motions to dismiss on this basis, because "[f]iduciary status is a fact sensitive inquiry" and such "complex legal and factual questions" cannot be resolved "prior to discovery." *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204 (KSH), 2007 U.S. Dist. LEXIS 59708, at *19–20 (D.N.J. Aug. 15, 2007); *Neurosurgical Assocs. of NJ, P.C. v. QualCare Inc.*, No. 15-3236, 2015 U.S. Dist. LEXIS 97884, at *5 (D.N.J. July 28, 2015) ("ERISA fiduciary status is highly fact-based, dependent upon the tasks performed by the individual or entity. Thus rulings on this issue have tended to occur after discovery rather than at the pre-discovery motion to dismiss stage."). A limited exception applies if fiduciary status is "squarely refuted by Plaintiffs' own pleading or by documents essential to their claims." *In re Honeywell Int'l ERISA Litig.*, No. 03-1214 (DRD), 2004 U.S. Dist. LEXIS 21585, at *33 n.13 (D.N.J. Sep. 14, 2004). But that is not the case here. Because this argument is premature and inherently

unsuitable for resolution on a motion to dismiss, the motion can and should be denied for this reason alone.

In any event, Plaintiffs plausibly allege that Empower acted as a fiduciary by rendering "investment advice for a fee." 29 U.S.C. § 1002(21)(A)(ii). Additionally, given that Empower profited at participants' expense by portraying itself as a fiduciary acting in their best interests, it would be inequitable to permit Empower to now deny that it was a fiduciary. Principles of estoppel thus bar this argument.

### A. Empower is a fiduciary under the plain statutory language.

A straightforward application of the plain statutory language compels the conclusion that Empower acted as an ERISA fiduciary. Given ERISA's broad remedial purposes, courts have an "obligation to liberally construe fiduciary status under ERISA." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 (4th Cir. 2019); *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (explaining that courts "construe ERISA fiduciary status liberally, consistent with ERISA's policies and objectives") (internal quotation marks omitted).

In relevant part, the statute provides that "a person is a fiduciary with respect to a plan to the extent he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii).[6] Plaintiffs

[6] "Person" includes corporate entities. 29 U.S.C. § 1002(9).

allege that Empower both: (1) rendered investment advice with respect to plan assets, and (2) was compensated for doing so.

Empower's standard package of services includes advising participants on how to invest the money in their accounts. Am. Compl. ¶¶ 107, 113. It provided these advice services throughout the class period. *Id*. In a defined-contribution plan, the entirety of the plan's assets are "allocated to individual accounts." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 302 (3d Cir. 2007); Am. Compl. ¶ 117 (plan participants' "accounts hold the assets of the entire plan"). Thus, by providing advice to participants as to how to invest the money in their plan accounts (*before* any non-plan rollover advice), Empower rendered investment advice with respect to plan assets.[7] Empower was undisputedly compensated for these services. Am. Compl. ¶ 108. Accordingly, at the time Empower advised participants to transfer assets out of their plans to Empower's Non-Plan Products (an additional instance of "advice"), Empower was a "fiduciary" under the plain statutory language.

Empower's motion fails to address the statutory language, relying solely on a "five-part regulatory test." Mem. at 9–14. While Empower's regulatory argument is meritless, its failure to address the statute establishes an independent basis to deny the motion.

[7] The Department of Labor's interpretive bulletin supports the view that investment advice to individual participants is "plan" advice within the meaning of 29 U.S.C. § 1002(21)(A)(ii). 29 C.F.R. § 2509.96-1(c).

### B. Empower provided investment advice under the regulation

Empower assumes that its fiduciary status is "govern[ed]" by a Department of Labor regulation, Mem. at 2, but does not address the threshold question of why the Court can or should look to regulatory guidance when the plain language of the statute shows that Empower acted as a fiduciary. The Third Circuit previously found the regulation controlling based on "*Chevron* deference." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 298 (3d Cir. 2014) ("We defer to the Department's reasonable interpretation of ambiguous provisions of ERISA.") (citing *Matinchek v. John Alden Life Ins. Co*., 93 F.3d 96, 100–01 (3d Cir. 1996), and *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843–44 (1984)). The Supreme Court has since overruled *Chevron*. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

The additional regulatory criteria in the five-part test have the effect of changing the statute. *Cf. Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 507 (3d Cir. 2009) (holding regulation invalid because DOL "has no authority to change the Act.") (quoting *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000)). By narrowing the statutory definition of who is a "fiduciary" under 29 U.S.C. § 1002(21)(A), the regulation is inconsistent with Congress' intent to define fiduciary "commodiously" so as to cover *all* "persons whose actions

affect the amount of benefits retirement plan participants will receive." *John Hancock*, 510 U.S. at 96 (citing 29 U.S.C. § 1002(21)(A)). Because Empower is a fiduciary under the statutory text and holding it liable as a fiduciary furthers Congressional intent, whether it *also* qualifies as a fiduciary under DOL's five-part test is beside the point. *Dawson-Murdock*, 931 F.3d at 278 (discussing courts' "obligation to liberally construe fiduciary status under ERISA").

In any event, to the extent the five-part test applies, Empower qualifies as an investment-advice fiduciary. *See* 29 C.F.R. § 2510.3-21(c)(1); Am. Compl. ¶¶ 109–19. Empower focuses on the requirement that an entity must provide investment advice on a "regular basis" to qualify as a fiduciary. Mem. at 10–12.[8] Empower's arguments mischaracterize or ignore what Plaintiffs allege.

Citing a single paragraph, Empower asserts that Plaintiffs allege only that Empower representatives had "multiple ongoing interactions" with them leading up to the advice to transfer assets out of their plans and into Empower's Non-Plan Products. Mem. at 10 (citing Am. Compl. ¶ 148). This isolated allegation is plucked from a section of the complaint addressing a distinct issue—the failure of Plaintiffs' employers to monitor or restrict Empower's predatory tactics. Am. Compl. ¶¶ 144–48. The allegations must be viewed as a whole, not parsed piece by

[8] 29 C.F.R. § 2510.3-21(c)(1)(ii)(B) ("Renders any advice [as defined above] on a regular basis to the plan").

piece. *Sweda*, 923 F.3d at 331.

The interactions referenced in paragraph 148, which immediately preceded the rollover advice, are part of a much larger course of investment advice that continued on a regular basis for years as part of Empower's standard package of services to employer-sponsored plans. Am. Compl. ¶¶ 107, 113, 117, 183. "A financial professional who works regularly with a specific plan ***and cultivates a relationship of trust and confidence with retirement investors may be acting as a fiduciary*** in light of the common law of trust's defining traits." *Fed'n of Ams. for Consumer Choice, Inc. v. U.S. Dept. of Labor*, No. 22-243, 2023 U.S. Dist. LEXIS 157268, at *48–49 (N.D. Tex. June 30, 2023), *adopted by* 2025 U.S. Dist. LEXIS 130004 (July 9, 2025) (emphasis added). That is precisely what Plaintiffs allege here. Empower worked regularly with Plaintiffs' plans and provided investment advice on a regular basis to participants over a course of years, thereby cultivating a fiduciary relationship of trust and confidence. Am. Compl. ¶¶ 107, 113, 117, 183.

Indeed, Empower apparently concedes that it acted as a fiduciary when it provided "retirement advisory services" for years as part of its standard package of services, but attempts to distinguish such general advice from the specific "rollover advice" challenged in the complaint. Mem. at 14. That asserted distinction fails. By providing general, non-rollover advice to plans and participants for many years as to how retirement assets should be invested, Empower cultivated a fiduciary

relationship of trust and confidence with those plans and their participants. When it then advised those same plans' participants to execute a rollover *out* of the plans, it "was acting as a fiduciary (that is, was performing a fiduciary function)"—providing investment advice—"when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see Federation*, 2023 U.S. Dist. LEXIS 157268, at *77–78 (rollover advice involves "potential fiduciary relationships" where a "salesperson establishes a relationship of trust and confidence as to [employer-sponsored] plan investors . . . . Giving a recommendation to an investor to sell their life savings is surely an investment recommendation, and it relates directly to individualized decisions."). Simply put, there is no principled basis for severing a rollover recommendation from the years of fiduciary investment advice that preceded it.

Empower's long-standing fiduciary advice relationship with the plans and Plaintiffs here thus distinguishes the facts addressed in *Carfora*, where the court interpreted the complaint as alleging only a few isolated instances of investment advice in connection with a rollover recommendation rather than a years-long advice relationship, as here. *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 145–50 (S.D.N.Y. 2022) (citing allegation of "an initial phone call, meeting, then recommendation to roll over assets"). *Carfora* is also unpersuasive because it refused to "aggregate" the defendant's conduct in advising plan

participants based on the mistaken view that fiduciary status applies only to "plan-level advising," and does not apply to participant-level advice. *Id*. at 146. That misunderstands the nature of a defined contribution plan—in which plan assets by definition are allocated to individual accounts—and conflicts with Department of Labor guidance. *See* 29 U.S.C. § 1002(34), *Graden*, 496 F.3d at 302 ("all of the plan's money is allocated to individual accounts"); *supra* at 13 n.7 (DOL interpretive bulletin describing when participant-level advice constitutes fiduciary investment advice with respect to plan assets).

Empower further contends that post-rollover advice does not render it a fiduciary, because at that point the assets are no longer held in ERISA "Title I" plans. Mem. at 4–5, 11–13. But Plaintiffs' theory does not depend on the premise that Empower became a fiduciary by virtue of *future* advice rendered *after* rollovers to Non-Plan Products. Rather, as discussed, Empower rendered investment advice on a continuous and regular basis to plans and participants for years while the assets were held in Title I plans, thereby establishing a trusted fiduciary-advice relationship *before* abusing that trust by recommending rollovers to its own Non-Plan Products. Am. Compl. ¶¶ 107, 113, 117, 183. For that reason, *American Securities Association* is inapposite, as the court there addressed only whether post-rollover advice was subject to ERISA fiduciary standards, rather than pre-rollover advice, as here. *Am. Sec. Ass'n v. United States DOL*, No. 22-330,

2023 U.S. Dist. LEXIS 24076, at *48–49 (M.D. Fla. Feb. 13, 2023) (excluding advice concerning assets held in IRA from the "regular basis" analysis because it is "inherently divorced from the ERISA-governed plan").

In sum, Plaintiffs plausibly allege that Empower acted as an ERISA fiduciary under both the plain language of the statute and the DOL's 1975 five-part test.

**C. Empower is equitably estopped from denying its fiduciary status.**

Although Plaintiffs plausibly allege Empower's fiduciary status for the reasons discussed, Empower should also be equitably estopped from disputing its fiduciary status.

The essence of a fiduciary relationship is "a special relationship of trust and confidence between the fiduciary and his client." *Chamber of Com. of United States of Am. v. United States Dep't of Lab.*, 885 F.3d 360, 365 (5th Cir. 2018) (citing Bogert, Law of Trusts & Trustees, § 481). The "most fundamental" aspect of a fiduciary's duty is acting with "complete loyalty to the interests of the beneficiary" while "exclud[ing] all selfish interest." *Pegram*, 530 U.S. at 224 (citing Bogert, § 543).

An integral component of Empower's scheme was to falsely persuade participants that Empower had their best interests at heart and that transferring assets to Empower's Non-Plan Products was the best decision for their financial future. Empower thus held itself out as "objective" and disinterested, when it was

anything but. Am. Compl. ¶¶ 38–39, 50–51, 54, 58. Empower emphasized to its salespeople the "critical" importance of explaining to participants at "the onset of discussion" during the Retirement Readiness Review sales process—which occurred *before* the rollover, while assets were still held in ERISA-governed plans—that Empower would be "giving them *fiduciary*, best interest advice." *Id.* ¶¶ 52, 90. These representations were distinct from contractual representations that Empower would act as a fiduciary in its role as a Registered Investment Adviser to the IRA. *Id*. ¶¶ 63, 90; *see* Empower Mem. at 12–13.

Having induced participants to execute rollovers based on Empower's representations that it was acting as a fiduciary at the time it made the rollover recommendation, Empower is equitably estopped from now denying its fiduciary status. Equitable estoppel is an appropriate remedy in ERISA cases, and "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (citation omitted). The doctrine "forms a very essential element in ... fair dealing, and rebuke of all fraudulent misrepresentation, which it is the boast of courts of equity constantly to promote." *Id*. (citation omitted).

Estopping Empower from denying its fiduciary status is appropriate here. Equitable estoppel will hold Empower to what it promised when it told participants that it was providing fiduciary advice in their best interests, and will prevent

Empower from unjustly profiting from its misrepresentations.

### D. Empower's misuse of plan data also establishes fiduciary status.

Although the Court need not reach the issue to deny Defendants' motion, Empower's misuse of the highly confidential data to which it has access as Plan recordkeeper also makes it a fiduciary. Am. Compl. ¶¶ 122–27. A recordkeeper normally is not a fiduciary when it merely "adheres to a specific contract term that is the product of arm's-length negotiation" and collects agreed-upon compensation in accordance with the contract. *See, e.g.*, *Teets v. Great-West Life & Annuity Ins. Co*., 919 F.3d 1232, 1244–45 (10th Cir. 2019). Empower here exceeded the bounds of its contractual duties and exercised control over the plans' administration and its own compensation through the cross-selling activities at issue, thereby acting as a fiduciary. *See id*. at 1245–46.

This argument does not depend on the premise that "data" is a "plan asset," as Empower argues. Mem. at 15–16. Instead, Empower's conduct involves an exercise of discretion, authority, or control over plans' management, disposition of assets, or administration, which makes it a functional fiduciary as defined by ERISA. *See* 29 U.S.C. § 1002(21)(A)(i), (iii).

## II. Plaintiffs alternatively allege a plausible claim for non-fiduciary liability.

Under certain of ERISA's remedial provisions, "fiduciary" status is a prerequisite to liability. *See* 29 U.S.C. § 1132(a)(2), incorporating § 1109(a)

(providing that "a fiduciary" who violates a duty may be held liable for various remedies). In contrast, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), "admits of no limit . . . on the universe of possible defendants." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000). Thus, a defendant may be held liable under § 502(a)(3) even if the defendant is not an ERISA fiduciary, if the defendant "knowingly participates" in an ERISA fiduciary's violation. *Id*. at 250–51. A non-fiduciary with actual or constructive knowledge of the circumstances constituting the breach of duty or rendering the transaction unlawful may be held liable for restitution. *Id.* at 251.

In *Carfora*, despite dismissing claims premised on a recordkeeper's fiduciary status, the court held that the defendant could nevertheless be held liable for having knowingly participated in the ERISA violations of plan sponsors who failed to monitor or restrict the defendant's cross-selling scheme. *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, No. 21-8384, 2024 U.S. Dist. LEXIS 97679, *11–12, *15–31 (S.D.N.Y. May 31, 2024). For the same reasons, Plaintiffs' allegations here state a plausible knowing participation claim. Am. Compl. ¶¶ 131–59, 198–206. Defendants' arguments for dismissal fail.

### A. Plaintiffs plausibly allege Empower's knowing participation in breaches of fiduciary duty.

Defendants assert that the Third Circuit has held that "ERISA does not authorize suits against non-fiduciaries 'charged *solely* with participating in a

fiduciary breach.'" Mem. at 17 (quoting *Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011)) (emphasis added). But a later Third Circuit opinion acknowledges that the "suggestion in *Renfro* that *Harris Trust* applies only to nonfiduciary parties in interest to § 406(a) transactions is dicta," and "to the extent that *Renfro* is inconsistent with the reasoning in *Harris Trust*," lower courts "must follow the Supreme Court over [Third Circuit] precedent." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 93 (3d Cir. 2012).

*Renfro* cannot be squared with *Harris Trust*. The specific claim in *Harris Trust* involved knowing participation in a prohibited transaction with a "party in interest" under ERISA § 406(a), 29 U.S.C. § 1106(a). *Harris Tr.*, 530 U.S. at 241. A "prohibited transaction" is purely a creature of statute; Congress enacted this provision to "supplement[]" the general trust-law duty of loyalty codified in § 404(a) by categorically barring certain transactions with a high potential for abuse. *Id*. at 241–42. In concluding that a non-fiduciary is subject to liability for knowingly participating in such a violation, the Supreme Court looked to "[t]he common law of trusts, which offers a 'starting point for analysis [of ERISA].'" *Id*. at 250 (quoting *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 447 (1999)).

> [I]t has long been settled that when a trustee *in breach of his fiduciary duty* to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's *breach of duty*. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or

> disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.

*Id*. (citing Restatement (Second) of Trusts §§ 284, 291, 294, 295, 297 (1959)) (emphasis added). In addition, liability at common law required a showing that the transferee "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in *breach of the trust*." *Id*. at 251 (emphasis added).

In short, the Supreme Court held that a non-fiduciary is subject to suit because a § 406(a) prohibited transaction is analogous to a common-law breach of fiduciary duty. It would be strange indeed if such a claim could *only* be brought when the underlying ERISA violation merely *resembles* a common-law breach of fiduciary duty, but not when the underlying violation is an *actual* breach of fiduciary duty. Because there is no logical basis to conclude that *Harris Trust* intended to limit knowing participation claims in that manner, "*Renfro* is inconsistent with the reasoning in *Harris Trust*," and this Court "must follow the Supreme Court over" *Renfro*. *Iola*, 700 F.3d at 93.

Moreover, as *Iola* explains, the case on which *Renfro* relied for its statement that ERISA does not authorize suit against "nonfiduciaries charged solely with participating in a fiduciary breach," *Reich v. Compton*, 57 F.3d 270, 284 (3d Cir. 1995), was subsequently "undercut" in *Harris Trust*. *Iola*, 700 F.3d at 88–89, 91. Other courts of appeals have also rejected the notion that *Harris Trust* is limited to

§ 406(a) prohibited transactions. *Id*. at 90.

Even on its own terms, *Renfro*'s narrow holding applies only when the defendant is "charged *solely* with participating in a fiduciary breach." 671 F.3d at 325 (emphasis added). Here, Empower is charged not only with participating in fiduciary breaches, but also with knowing participation in § 406 prohibited transactions. Am. Compl. ¶¶ 152, 158–59, 203. Therefore, even if *Renfro* could be reconciled with *Harris Trust*, it does not apply in any event.

**B. Plaintiffs plausibly allege Empower's knowing participation in prohibited transactions.**

Empower makes two arguments against Count III to the extent it is based on knowing participation in prohibited transactions. Both fail.

*First*, Empower contends that hiring a service provider in an arm's-length transaction does not constitute a prohibited transaction. Mem. at 18. That argument is foreclosed by *Cunningham v. Cornell University*, 604 U.S. 693 (2025). As *Cunningham* notes, several courts of appeals had concluded that interpreting § 1106(a) as applying to arm's-length service provider agreements would lead to "absurd results," and thus grafted various extratextual requirements onto such claims, such as a need to allege self-dealing. *Id*. at 698–99; *see Cunningham v. Cornell Univ*., 86 F.4th 961, 973–74 (2d Cir. 2023), *rev'd*, 604 U.S. 693 (2025) (discussing "different means of narrowing the statute" adopted by Third, Seventh, and Tenth Circuits). The Supreme Court rejected these interpretations of the

statute, holding that "plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less." *Cunningham*, 604 U.S. at 709. ERISA plaintiffs are not required to plead around potential exemptions, which are affirmative defenses, or to otherwise allege facts that are not tied to the § 1106(a) elements, such as the lack of arm's-length bargaining:

> Section 1106(a)(1)(C)'s bar is categorical: Any transaction that satisfies its three elements is presumptively unlawful. Nothing in that section removes from its categorical bar transactions that were necessary for the plan or involved reasonable compensation. Accordingly, under §1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim.

*Id*. at 700. *Cunningham* thus abrogates Empower's cases, all of which predate *Cunningham*.

*Second*, Empower disputes the "party in interest" element of a prohibited transaction, on the ground that Plaintiffs must allege a "preexisting relationship between Empower and their former employer-sponsored plans." Mem. at 19. It is doubtful that such a requirement remains good law after *Cunningham*, as nothing in § 1106(a) or the relevant "party in interest" definition (29 U.S.C. § 1002(14)(B)) requires a preexisting relationship. But assuming such a relationship is required, Plaintiffs have alleged it here. Plaintiffs allege that Empower has been a service provider to retirement plans since 2014, and was thus a "party in interest" because it was already providing services to the plans at issue at the start of the class period

in 2015 and at the time of the challenged conduct. Am. Compl. ¶¶ 30, 172; *see* 29 U.S.C. § 1002(14)(B).

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion to dismiss.[9]

May 21, 2026

Respectfully submitted,

s/ Chen Kasher
Chen Kasher, Bar No. 044882011
Jerome J. Schlichter (admitted *pro hac vice*)
Andrew D. Schlichter (admitted *pro hac vice*)
Joel D. Rohlf (admitted *pro hac vice*)
Patrick R. Kutz (admitted *pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Ste. 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax: (314) 621-5934
ckasher@uselaws.com
jschlichter@uselaws.com
aschlichter@uselaws.com
jrohlf@uselaws.com
pkutz@uselaws.com

Ruben R. Chapa (admitted *pro hac vice*)
SCHLICHTER BOGARD LLC
33 North Dearborn, Ste. 1170
Chicago, IL 60602
Phone: (630) 919-9301
Fax: (314) 621-5934
rchapa@uselaws.com

[9] While Plaintiffs' existing allegations are sufficient, Empower's request for a dismissal with prejudice is also improper. *See supra*, p.3.

Forrest James IV (admitted *pro hac vice*)
FOB JAMES LAW FIRM, LLC
2226 1st Ave South, Suite 105
Birmingham, Alabama 35233
Phone: (205) 407-6009
Fob@fobjameslaw.com

James Z. Foster (admitted *pro hac vice*)
FOSTER LAW LLC
1201 West Peachtree St, NW, Suite
2300 Atlanta, Georgia 30309
Phone: (404) 800-0050
Fax: (404) 493-2322
James@Foster-Law.com

*Counsel for Plaintiffs & the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Chen Kasher, hereby certify that on May 21, 2026, I caused the foregoing to be delivered electronically via ECF and email to all parties through their counsel of record.

s/ Chen Kasher
Chen Kasher